UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Cr. No. 18-20579

        v.                              Hon. Victoria A. Roberts

BRADLEY A. STETKIW,

        Defendant.
                                           /

## MOTION TO SUPRESS FOR LACK OF PROBABLE CAUSE

    Bradley Stetkiw, through attorneys James Gerometta and Benton Martin, moves to suppress evidence and fruits obtained through a search warrant executed on October 25, 2017, because the warrant affidavit failed to establish probable cause to search. He files a brief in support and also states:

    1.    The government has charged Mr. Stetkiw with receipt and possession of child pornography, and with operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. (R. 1, Indictment, Pg ID 1-6.)

    2.    The government intends to use evidence derived from a search of Mr. Stetkiw's home pursuant to a warrant affidavit alleging that he bought and sold Bitcoin with undercover officers. The warrant affidavit alleged that buying and selling Bitcoin without a license is a violation of § 1960. (R. 20-2, Residential Search Warrant, Pg ID 47.)

3.  But buying and selling Bitcoin without a license *is not* a crime. First, Bitcoin is not "money" as that term is used in § 1960 because Bitcoin does not issue from or enjoy the protection of any sovereign government. *See United States v. Petix,* No. 15-CR-227A, 2016 WL 7017919, at *5 (W.D.N.Y. Dec. 1, 2016). Second, the term "money transmitting" in § 1960(b)(2) covers only situations where a defendant acts as an intermediary to transfer money from one person or entity on behalf of another. It does not cover the type of simple two-party transactions Stetkiw is accused of conducting, where he would buy Bitcoin, store it in his own digital wallet, and then later sell that Bitcoin to an unrelated second person.

4.  Under the Fourth Amendment, a search warrant may not issue without probable cause. U.S. Const., Amend IV. Probable cause exists where the issuing judge can determine that there is a fair probability that evidence of *criminal activity* will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Because the warrant here failed to make allegations sufficient to show a fair probability that evidence of a crime would be found in Mr. Stetkiw's electronic devices, the search violated the Fourth Amendment.

5.  Defense counsel has discussed this matter with the government, and the government does not concur in the requested relief.

Stetkiw asks the Court to suppress all evidence seized during the search of his electronic devices, and fruits of those searches, as obtained in violation of the Fourth Amendment.

Respectfully Submitted,

FEDERAL DEFENDER OFFICE

s/James R. Gerometta
james_gerometta@fd.org

s/Benton C. Martin
benton_martin@fd.org

Attorneys for Defendant
613 Abbott St., 5th Floor
Detroit, MI 48226
Phone: 313-967-5542

Dated: November 2, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    Cr. No. 18-20579

        v.                            Hon. Victoria A. Roberts

BRADLEY A. STETKIW,

        Defendant.
        _____/

**BRIEF IN SUPPORT OF
<u>DEFENDANT'S MOTION TO SUPPRESS</u>**

    The government seeks to use evidence discovered in Bradley Stetkiw's home during execution of a federal search warrant. (R. 20-2, Ex. A to Mot. Supp. Evidence Obtain Outside Scope of Warrant, Warrant Affidavit, Pg ID 47–82.) The search affidavit accused Mr. Stetkiw of violating 18 U.S.C. § 1960 by buying and selling Bitcoin. (*Id.* at Title Page, page 3, and Attachment B.) But buying and selling Bitcoin is not a crime under § 1960. Without an allegation of criminal activity, the search affidavit failed to establish probable cause, and suppression is required.

## <u>Background</u>

    According to the warrant, Mr. Stetkiw advertised on LocalBitcoins.com that he would buy or sell Bitcoins in exchange for U.S. currency. (*Id.* at Pg ID 50.) He met customers in person to negotiate price. (*Id.* at Pg ID 51–58.) Although he later sold

1

Bitcoins he bought to different individuals, there is no allegation that he ever acted as a middle man between two individuals acting in coordination, thereby transmitting funds from one person to another. The warrant claimed that Mr. Stetkiw's actions constituted a violation of 18 U.S.C. § 1960. (*Id.*, Cover Page, Page 3, and Attachment B.)

Bitcoins are computer files managed through a digital ledger system accessible to anyone who downloads the Bitcoin software. *See United States v. Petix*, No. 15-CR-227A, 2016 WL 7017919, at *5 (W.D.N.Y. Dec. 1, 2016); Shahla Hazratjee, *Bitcoin: The Trade of Digital Signatures*, 41 T. Marshall L. Rev. 55, 59 (2015). Bitcoins do "not issue from or enjoy the protection of any sovereign; in fact, the whole point of Bitcoin is to escape any entanglement with sovereign governments." *Petix*, 2016 WL 7017919, at *5. "Like marbles, Beanie Babies™, or Pokémon™ trading cards, bitcoins have value exclusively to the extent that people at any given time choose privately to assign them value." *Id.*

Section 1960 prohibits the operation of "unlicensed money transmitting businesses," defined as follows:

> "a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

(A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

(C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity . . .

18 U.S.C. § 1960(b)(1).

The statute's only definition of "money transmitting" is that the term "includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." *Id.* § 1960(b)(2).

## Argument

### I. The Fourth Amendment requires a search affidavit to establish probable cause of a *criminal offense*.

Under the Fourth Amendment, a search warrant may not issue without probable cause. U.S. Const., Amend IV. Probable cause exists where the issuing judge can determine that there is a fair probability that evidence of *criminal activity*

3

will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The concept of probable cause makes sense only in relation to criminal offenses." *McKinney v. Fields*, No. 07-CV-10652, 2010 WL 3583017, at *6 (E.D. Mich. Sept. 10, 2010). In other words, if a suspect's actions are not criminal, then probable cause does not exist. *See United States v. Fuller*, 120 F. Supp. 3d 669, 690 (E.D. Mich. 2015) (holding legal actions could not give rise to probable cause).

In determining whether a search warrant was based upon probable cause of a criminal offense, the Court is limited to the information described in the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). "Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964).

**II. The search affidavit fails to establish probable cause because buying and selling Bitcoin is not a criminal offense.**

1. <u>Bitcoin is not "money" as that term is used in § 1960.</u>

To see why § 1960 doesn't apply to Bitcoin, the Court need not look further than the plain meaning of the terms in the statute itself. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("[The] first step in interpreting a statute is to

4

determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). The key term here is "money," which the statute does not truly define. Instead, it states only that money transmitting "includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." *Id.* § 1960(b)(2). The statute provides no other definition of "funds" or "transferring." *United States v. Ali*, No. 06-CR-200, 2008 WL 4773422, at *12 (E.D.N.Y. Oct. 27, 2008) ("That the statute essentially defines the term 'money transmitting business' as 'money transmitting business' in subsection (b)(1) is among the more glaring problems the statute presents.").

But our laws provide countless uses of the term "money," and they all share one critical commonality: "the involvement of a sovereign." *Petix*, No. 2016 WL 7017919, at *4. For example, the Constitution gives Congress the power to "coin Money, [and] regulate the Value thereof." U.S. Const. art. I, § 8, cl. 5. Similarly, the Uniform Commercial Code defines money as "a medium of exchange currently authorized or adopted by a domestic or foreign government." U.C.C. § 1-201(b)(24). Federal law elsewhere defines "money" as something depositable in the U.S. Treasury. *See, e.g.,* 31 U.S.C. § 3302. Use of the term "funds" in § 1960 does not

5

expand the definition of "money," since "funds" is ordinarily defined simply as "sums of money set aside for a specific purpose." *Clark v. Rameker*, 134 S. Ct. 2242, 2246 (2014) (quotations omitted); *see Petix*, 2016 WL 7017919, at *4 (collecting examples); MONEY, Black's Law Dictionary (10th ed. 2014) (defining "money" as, among other things, "Funds; sums of money").

The Supreme Court has endorsed this same concept of "money" as issuing from a sovereign power: As far back as 1870, the Court explained, quoting Blackstone, that "[t]he coining of money is the act of the sovereign power, *that its value may be known on inspection.*" *Legal Tender Cases*, 79 U.S. 457, 491 (1870) (emphasis in original), *abrogated in part on other grounds by Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 326 n.21 (2002).

Moreover, modern economist agree that Bitcoin is not money. For example, in October 2017, investment firm Bernstein issued a report explaining the history of "money" and why Bitcoin doesn't fit that description. Ex. A, Gautam Chhugani & Gaurav Jangale, *CryptoFinance Insights: Is Bitcoin money?* (Oct. 11, 2017). Notably, Bitcoin's value fluctuates daily, by as much as 5 to 10% per day, and "[f]iat money is still the final form of settlement – governments still collect taxes in fiat

6

money and salaries are still paid in fiat money." *Id.* at 4. Thus, while Bitcoin shares some "core functionalities of money," it has yet to reach that status. *Id.*[1]

There is no persuasive reason here to depart from this understanding of money as a regulated instrument, and under this definition, the warrant affidavit failed to establish probable cause of a criminal offense.

Granted, a handful of courts have relied on broad dictionary definitions of "money" or "funds" to hold that § 1960 covers Bitcoin. In *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014), the court relied on Merriam-Webster's definition of "money" as "something generally accepted as a medium of exchange, a measure of value, or a means of payment." Similarly, in *United States v. Murgio*, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016), the court relied on Webster's definition of "funds" as "'available pecuniary resources,'" noting that "Bitcoins are 'used as a medium of exchange' and 'a means of payment.'" *See also United States v. Mansy*,

---

[1] *See also* Nicole D. Swartz, *Bursting the Bitcoin Bubble: The Case to Regulate Digital Currency As A Security or Commodity,* 17 TUL. J. TECH. & INTELL. PROP. 319, 335 (2014) ("The bitcoin should not be regulated as a currency because it does not function as a reliable medium of exchange, unit of account, or store of value."); Simon Constable, *Why Bitcoin Still Isn't Money*, FORBES (Dec. 11, 2017), https://www.forbes.com/sites/simonconstable/2017/12/11/why-bitcoin-still-isnt-money/#305d17bb16c8 (explaining why Bitcoin is not money under the economist's general definition of the term money).

7

No. 2:15-CR-198-GZS, 2017 WL 9672554, at *1 (D. Me. May 11, 2017) (adopting *Faiella* reasoning).

But the court in *Petix*, 2016 WL 7017919, at *6, refused to follow this approach. Examining this issue in depth, the court emphasized that "[c]riminal monetary statutes exist in part to protect a uniform, regulated monetary system; that is, they aim to prevent any implicit lending of sovereign power or legitimacy to criminal enterprises." *Id.* at 5. It also observed: "As for experiences in daily life, ordinary people do not receive salaries in bitcoins, cannot deposit them at their local banks, and cannot use them to pay bills." *Id.*

Stetkiw argues that *Petix* is correct, that the warrant to search his home thus lacked probable cause, and that suppression is required.

2. Buying and selling Bitcoin is not "money transmitting" as that term is used in § 1960.

Even if Bitcoin is "money" under § 1960, that does not end this Court's inquiry. To allege a § 1960 violation, the search affidavit had to state that Stetkiw was involved in "money transmitting." Again, all § 1960 says to define "money transmitting" is that it "includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2).

8

A plain reading the phrase "transferring funds on behalf of the public" is that, to commit a § 1960 offense, a person must transmit money on someone's "behalf." In other words, the statute anticipates a three-party transaction: the defendant agrees to send money to Person A "on behalf of" Person B. The allegation in the search warrant, in contrast, is that Mr. Stetkiw merely engaged in a series of two-person transactions: He paid for Bitcoins that he stored in his own digital wallet, and then later sold some of that Bitcoin (ideally for a profit) to an unrelated purchaser.

Case law backs up this interpretation of "money transmitting" as a three-party transaction. Courts generally hold this statute applies to any business that "'receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country.'" *United States v. Ali*, 561 F. Supp. 2d 269, 272 n.3 (E.D.N.Y. 2008) (quoting *United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999)). This "three party" definition is the same circumstance in which the statute has been applied in every federal appeals court decision counsel could find. *See, e.g., United States v. Sufi*, 456 F. App'x 524, 526 (6th Cir. 2012) (involving running intermediary "Hawala" money transfer business); *United States v. Keleta*, 552 F.3d 861, 862 (D.C. Cir. 2009) (involving unlicensed business sending money overseas on behalf of U.S.

9

citizens); *United States v. Dimitrov*, 546 F.3d 409, 411 (7th Cir. 2008) (same); *United States v. Abdullahi*, 520 F.3d 890, 892 (8th Cir. 2008) (same). In addition, other federal laws defining "money transmitting services" require that, to fall under that category, an entity must both accept funds *and* transmit those funds to another location or person. *See* 31 C.F.R. § 1010.100(ff)(5)(1); 31 U.S.C. § 5330(d)(2).

*Faiella*, which applied § 1960 to a Bitcoin seller, is distinguishable from Stetkiw's case on the issue of "transmitting." The defendant in *Faiella* argued, as Stetkiw does, that he was not transmitting money because he "merely sold Bitcoin as a product in and of itself." 39 F. Supp. 3d at 546. But the court rejected this argument on factual, rather than legal, grounds: The defendant had transferred Bitcoin into his customers' accounts on the online marketplace "Silk Road" in exchange for cash deposits. *Id.* Silk Road administrators could block or seize the money, so the customer did not maintain full control. *Id.* Because the defendant "transferred" the Bitcoins to this type of "third party," the court reasoned that his conduct fell under the definition of "money transmitting" in § 1960. *Id.*

The affiant made no similar allegation in the search warrant here. There is no allegation that Stetkiw ever acted as an intermediary to any third-party transfers.

10

Thus, the search affidavit failed to establish probable that Mr. Stetkiw engaged in "money transmitting" under § 1960.

### III. The good faith exception should not apply.

At first glance, the existence of a split among district courts on whether transmitting Bitcoin violates § 1960 may appear to support application of the good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897 (1984). But this rule does not apply for two reasons.

First, there is no support for the idea that the simple buying and selling of Bitcoin (the "two party" transaction) is criminal.

Second, this Court should not apply the good-faith exception in the absence of binding appellate law establishing that buying and selling Bitcoin establishes probable cause to search for a violation of § 1960. Under *Davis v. United States*, 564 U.S 229, 249-50 (2011), the good faith exception applies "when police conduct a search in objectively reasonable reliance on binding appellate precedent." Thus, if the appellate law "is (at best) unclear," then the good-faith exception should not apply. *United States v. Lara*, 815 F.3d 605, 613 (9th Cir. 2016); *see also United States v. Bain*, 874 F.3d 1, 20 (1st Cir. 2017) (refusing to apply the good-faith exception when circuit law was not "clear and well settled").

11

"When the police rely on novel extensions of [appellate] precedent, they engage in the sort of legal analysis better reserved to judicial officers, whose 'detached scrutiny . . . is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Davis*, 598 F.3d 1259, 1267 (11th Cir. 2010), *aff'd*, 564 U.S. 229 (2011) (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)). "When law enforcement officers rely on precedent to resolve legal questions as to which '[r]easonable minds . . . may differ,' *Leon*, 468 U.S. at 914, the exclusionary rule is well-tailored to hold them accountable for their mistakes." *Davis*, 598 F.3d at 1267. Because there is no binding appellate law adopting the affiant's novel interpretation of § 1960, exclusion is the appropriate remedy.

## Conclusion

Bitcoin is not money, and a person who buys Bitcoin to store in their own digital "wallet" to later sell to an unrelated buyer is not involved in "money transmitting" under § 1960. Because the search affidavit here failed to establish a violation of § 1960, or any other criminal law, it did not provide probable cause to search Mr. Stetkiw's residence and electronic devices. As a result, all evidence seized during these searches, and fruits of those searches, must be suppressed.

Respectfully Submitted,

FEDERAL DEFENDER OFFICE

s/James R. Gerometta
james_gerometta@fd.org

s/Benton C. Martin
benton_martin@fd.org

Attorneys for Defendant
613 Abbott St., 5th Floor
Detroit, MI 48226
Phone: 313-967-5542

Dated: November 2, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,    Cr. No. 18-20579

    v.    Hon. Victoria A. Roberts

BRADLEY A. STETKIW,

    Defendant.
_____/

## **CERTIFICATE OF SERVICE**

 I certify that on November 2, 2018, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.