UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Criminal No. 18-20579

    Hon. Victoria A. Roberts

D-1   BRADLEY A. STETKIW,

    Defendant.

**GOVERNMENT'S CONSOLIDASTED OPPOSITION TO DEFENDANT'S MOTIONS TO SUPRESS FOR LACK OF PROBABLE CAUSE (Doc. 21) AND TO DISMISS (Doc. 22**

Defendant BRADLEY A. STETKIW ("STETKIW") has filed two motions based on the same premise: that the federal statute criminalizing unlicensed money transmitting businesses (18 U.S.C. § 1960, hereinafter "Section 1960") does not apply to transactions involving the cryptocurrency bitcoin. The United States opposes STETKIW's motions, and files this consolidated response.

## FACTS

### Introduction to Cryptocurrency

A cryptocurrency, such as bitcoin, is "at the most basic level . . . a medium of exchange that functions like money (in that it can be exchanged for goods and services) but, unlike traditional currency, is untethered to, and independent from,

national borders, central banks, sovereigns, or fiats." Latham & Watkins LLP, *Cryptocurrency:APrimer*, at 2, www.lw.com/thoughtLeadership/LW-cryptocurrency-a-primer (last visited Dec. 3, 2018) (Attached as Exhibit 1). "In other words, it exists completely in the virtual world, traded on multiple global platforms." Id. Bitcoin is the most popular cryptocurrency. See, e.g., Id.

Despite being "virtual," bitcoins can be used to purchase tangible goods. As of 2015, there were "anywhere from 80,000 to 220,000 [bitcoin] transactions occurring per day, representing over $50 million in estimate daily volume." Id. The mainstream retailer Overstock.com accepts bitcoins. See 99bitcoins.com/who-accepts-bitcoins-payment-companies-stores-take-bitcoins; help.overstock.com/help/s/article/Bitcoin. Since, 2014, the e-commerce giant PayPal has permitted merchants on its platform to accept bitcoins. See money.cnn.com/2014/09/26/technology/paypal-bitcoin/index.html. Bitcoins can even be used to order pizza. See, e.g., www.pizzaforcoins.com.

But bitcoins also have a darker side. Like any medium of exchange, they can be used to purchase illegal goods and services. And, in recent years, bitcoin's popularity and value have exploded because of online markets hawking drugs and other illegal goods. See, e.g., United States v. Ulbricht, 31 F.Supp.3d 540 (S.D.N.Y. 2014); Largest Online "Dark Market" Shutdown, DOJ Press Release of June 20, 2017, available at 2017 WL 3085659 (D.O.J.).

## Bradley A. Stetkiw

The warrant affidavits and the indictment challenged by STETKIW concern the same core facts. STETKIW, facilitated by advertisements on the website "LocalBitcoins," exchanged bitcoins for cash and vice versa. Exhibit 2 (Search Warrant Application and Affidavit) at p. 3 ¶6, p. 5 ¶11. STETKIW claimed to be "the longest, most reliable and honest trader in Oakland County." Id. at p. 3 ¶6.

STETKIW was charged with violating Section 1960 after engaging in undercover transactions totaling $56,700. Id. at p. 6 ¶13. An undercover officer—after making initial contact with STETKIW via the "LocalBitcoins" website—provided STETKIW with U.S. currency. Id. STETKIW, in return for a fee, then electronically transferred control of bitcoins to the undercover officer. Id. STETKIW indicated that he was aware that his business was illegal, and provided tips to the undercover officer on concealing cash to avoid seizure by the police. See, e.g., Id. at p. 7 ¶ 13 a ii-iii, p. 9 ¶13 b ii, pp 9-10 ¶ 13 c ii.

At no time did STETKIW attempt to verify the identity of the undercover officer, and he was explicit that he did not wish to know what his customer was going to do with the bitcoins. Id. at p. 8 ¶ 13 a vi. STETKIW was not a licensed money transmitter. See Id. at ¶12.

# ARGUMENT

STETKIW does not claim that his business was, in fact, licensed. He does not claim that he followed requirements such as verifying the identities of his customers or filing currency transaction reports (CTRs). Instead, he argues that Section 1960 is inapplicable to his business because (1) bitcoins are not "money" and (2) he exchanged bitcoins for cash directly with customers instead of directing funds to a third party.

Both of STETKIW's arguments fail. Exchanging bitcoins for cash is within the conduct addressed by Section 1960, and the statute does not exempt person-to-person transactions.

## Exchanging Cash for Bitcoin is "Money Transmitting" Because Bitcoins are "Funds"

The dispositive question is whether electronically transferring bitcoins in exchange for cash is "money transmitting" as defined by Section 1960. It is.

Section 1960 defines "money transmitting" to include "transferring funds on behalf of the public by any and all means." The operative term is "funds"—if "funds" encompasses bitcoins, then STETKIW engaged in "money transmitting" when he transferred bitcoins to the undercover agent in return for cash.

In deciding what constitutes "funds," courts focus not on intrinsic properties but on how something is used—"funds" serve as a medium of exchange. They have

"monetary value [and] are susceptible to ready financial use." United States v. Day, 700 F.3d 713, 725-26 (4th Cir. 2012) (holding that gold qualified as funds "under the transportation money laundering statue where it is moved as a liquid, monetary asset."). "[I]t is clear that bitcoins are funds within the plain meaning of that term. Bitcoins can be accepted as a payment for goods and services or bought directly from an exchange with a bank account . . . they therefore function as pecuniary resources and are used as medium of exchange and a means of payment." United States v. Murgio, 209 F. Supp. 3d. 698, 707 (S.D.N.Y. 2016) (citations and internal quotations omitted).

Courts across the country have repeatedly used similar logic to come to the identical conclusion. E.g., United States v. Mansy, No. 15-cr-198, 2017 WL 9672554 at *1 (D. Me., May 11, 2017) ("Defendants contend that their business fell outside the purview of Section 1960 because bitcoins are not 'money' or 'funds' within the meaning of the statute. The Court disagrees . . ."); United States v. Faiella, 39 F Supp.3d 544, 545 (S.D.N.Y. 2014) ("Bitcoin clearly qualifies as 'money' or 'funds' . . . Bitcoin can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions); United States v. Ulbricht, 31 F.Supp.3d 540, 570 (S.D.N.Y. 2014) ("Put simply, 'funds' can be used to pay for things in the colloquial sense. Bitcoins can be either used directly to pay for certain things or can act as a medium of exchange and be converted into

5

a currency which can pay for things."); <u>Securities and Exchange Commission v. Shavers</u>, No 4:13-CV-416, 2013WL 4028182 at*2 (E.D. Texas August 6, 2013) (not reported) ("It is clear that Bitcoin can be used as money.").

These rulings are the natural extension of earlier cases involving other virtual currencies, in which courts consistently held that digital means of exchange are covered by Section 1960. <u>See, e.g.</u>, <u>United States v. Budovsky</u>, 2015 WL 5602853 at (S.D.N.Y. September 23, 2015) at *14 (holding that virtual currency known a "Liberty Reserve" qualified as "funds" for purposes of Section 1960); <u>United States v. E-Gold, Ltd.</u>, 550 F. Supp. 2d 82 (D.D.C. 2008) (holding that exchange of the digital currency known as "e-gold" was covered by Section 1960).

The contrary interpretation of Section 1960 advocated by STETKIW would frustrate the avowed purpose of the statute: to prevent criminals from anonymously transferring tainted funds. <u>See, e.g.</u>, <u>Murgio</u>, 209 F. Supp. 3d at 708 ("The legislative history of § 1960 supports the conclusion that bitcoins fall within the statute's purview . . . From its inception [ ], § 1960 sought to prevent innovative ways of transmitting money illicitly."); <u>Faiella</u>, 39 F. Supp. 3d 544 at 546 ("Indeed, it is likely that Congress designed the statute to keep pace with such evolving threats. . ."). An interpretation of the statute facilitating the online, anonymous purchase of contraband is contrary to its explicit justification, and should therefore be rejected.[1]

---

[1] This complete alignment between STETKIW's business and the harm that Section 1960 was enacted to prevent

STETKIW's sole legal authority in support of his position that bitcoin is exempt from Section 1960 is an unpublished and un-adopted magistrate decision: United States v. Petix, No. 15-CR-227A, 2016 WL 7017919 (W.D.N.Y. Dec 1, 2016). The weight STETKIW gives this decision is inappropriate. The district court refused to adopt it, and its holding was explicitly rejected by the sole court to have cited it. Mansy, 2017 WL 9672554 at *2 ("No only was this decision never adopted by the district court, but this Court is not persuaded by its reasoning . . .").

Petix has not been accepted because it is flawed. Like STETKIW's brief in support of his motion, the logic of that decision depends on equating bitcoins to collectables such as "marbles, Beanie Babies™, or Pokémon™ trading cards." Id. at *5. But these comparisons are inapt. The purpose of bitcoin is to serve as a medium of exchange. One cannot order a sofa from Overstock.com with a marble, electronically transfer a Beanie Baby™ to complete a PayPal transaction, or purchase a pizza with a Pokémon™ card. "Indeed, the only value for Bitcoin lies in its ability to pay for things—it cannot be put on a shelf and looked at or collected in a nice display case." Ulbricht, 31 F. Supp. 3d at 570. Bitcoin's *raison d'état* is to transfer wealth. To rule that its transfer is not "money transmitting" would be contrary to both Section 1960 and the history of bitcoin itself.

---

differentiates this case from Yates v. United States, 135 S.Ct. 1074, 1079 (2015) (Holding that, although a fish may literally a "tangible object," it did not count as such for purposes of the Sarbanes-Oxley Act because to do so would be inconsistent with that statute's focus on "corporate and accounting deception and cover-ups").

7

### **Person-to-Person Transfer of Funds Qualify as "Money Transmitting"**

STETKIW also argues that Section 1960 is inapplicable to his business because he only transferred funds between himself and his clients. But there is no basis in the statutory language—or the case law—for requiring that a third party be involved in "money transmitting."

Section 1960 does require that funds be transferred "on behalf of the public." But this plain language merely recognizes that someone who occasionally exchanges funds on behalf of a family member of friend is not operating a "business." See United States v. $215,587.22 in U.S. Currency, 306 F. Supp 3d 213, 218 (D.D.C. 2018) ("the most natural meaning of the phrase is that the money transmissions must be made for third-parties or customers as part of a commercial or business relationship, instead of with one's own money or for family or personal acquaintances."). STETKIW advertised his business, and was therefore by definition offering his services to the public.

STETKIW has collected several cases in which third parties were involved in the illegal transmitting of funds. But none of these cases purport to define the outer limits of what qualifies as "money transmitting," and none held that two party transactions are insufficient to trigger the statute. In the absence of contrary authority, there is no reason to deviate from the plain language of the statute and

insert an element that Congress did not require.[2]

## The Rule of Lenity is Inapplicable

Finally, STETKIW is not entitled to benefit from the rule of lenity. The rule of lenity is "reserved . . . for those situations in which a reasonable doubt persist about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating polices of the statute" Faiella, 39 F Supp. 3d at 547 (citations and internal quotations omitted) (emphasis in original). This is not such a case, as courts have ruled when considering the identical issue raised here. See, e.g., Id.; Mansy, 2017 WL 9672554 at *2.

## Good Faith Would Save the Search Warrant at Issue

Even if the Court were to adopt STETKIW's interpretation of the law and dismiss Count Three of the indictment, the fruits of the warrants at issue would survive an analysis under the good faith doctrine. As described above, the affidavit alleged a violation of Section 1960 consistent with existent case law. Any violation of law was therefore neither "sufficiently deliberate that exclusion could meaningfully deter it" nor "sufficiently culpable that such deterrence is worth the price paid by the justice system." United States v. Master, 614 F.3d 236, 243 (6th

---

[2] Even if such a "third party" requirement existed, STETKIW's business would still run afoul of Section 1960. STETKIW never verified either the identity of his customers or the identity of who controlled the digital wallet to which he transmitted bitcoins. Exhibit 2 at p. 6 ¶ 13. STETKIW merely transmitted bitcoins to digital addresses provided by his customers. Id. at p. 5 ¶ 11. He therefore had no idea whether the funds were transmitted to an address controlled by the person who provided him the cash.

Cir. 2010) (quoting Herring v. United States, 129 S. Ct. 695, 702 (2009).

## CONCLUSION

For the reasons outlined above, the Court should deny STETKIW'S Motion to Suppress for Lack of Probable Cause and his Motion to Dismiss. The Government does not believe an evidentiary hearing is necessary, as the Government believes that the facts are not in dispute.

                    Respectfully submitted,

                    MATTHEW SCHNEIDER
                    United States Attorney

                    */s/ TIMOTHY J. WYSE*
                    Timothy J. Wyse
                    Assistant U.S. Attorney
                    (313) 226-9144
                    211 West Fort, Suite 2001
                    Detroit, Michigan  48226
                    Timothy.Wyse@usdoj.gov

December 7, 2018