**Department of the Treasury**
**Financial Crimes Enforcement Network**

FIN-2014-R002

Issued:     January 30, 2014

Subject:    Application of FinCEN's Regulations to Virtual Currency Software Development and Certain Investment Activity
_____

Dear [ ]:

      This responds to your letters of May 21, 2013 and July 10, 2013, seeking an administrative ruling from the Financial Crimes Enforcement Network ("FinCEN") regarding the status of [ ] (the "Company") as a money services business ("MSB") under the Bank Secrecy Act ("BSA").  Specifically, you ask whether the periodic investment of the Company in convertible virtual currency, and the production and distribution of software to facilitate the Company's purchase of virtual currency for purposes of its own investment, would make the Company a money transmitter under the BSA.

      In your May 21, 2013 letter, you state that the Company intends to produce a piece of software that will facilitate the Company's purchase of virtual currency from sellers, by automating the collection of the virtual currency and the payment of the equivalent in currency of legal tender.  The seller would initiate the process via the software's interface, offering its virtual currency to the Company, choosing among several options for a means of receiving the equivalent in currency of legal tender (check, credit to a designated credit, debit, or prepaid card, or payment processed through a third-party money transmitter), and paying a transaction fee.  The software would not be sold or provided to any third party for resale, and it would be reserved for the sole use of the Company's counterparties.

      Your addendum of July 10, 2013 clarifies that the Company intends to limit its activities to investing in convertible virtual currencies for its own account, purchasing virtual currency from sellers and reselling the currency at the Company's discretion, whenever such purchases and sales make investment sense according to the Company's business plan.  The seller would offer its virtual currency to the Company via the software discussed above, and the Company would sell all or part of its virtual currency at a virtual currency exchange after receipt from the seller, at a time of the Company's choosing based on the Company's own investment decisions.

BSA Obligations of the Company as a Software Provider

On July 21, 2011, FinCEN published a Final Rule amending definitions and other regulations relating to MSBs (the "Rule").[1] The amended regulations define an MSB as "a person wherever located doing business, whether or not on a regular basis or as an organized business concern, wholly or in substantial part within the United States, in one or more of the capacities listed in paragraphs (ff)(1) through (ff)(6) of this section. This includes but is not limited to maintenance of any agent, agency, branch, or office within the United States."[2]

BSA regulations, as amended, define the term "money transmitter" to include a person that provides money transmission services, or any other person engaged in the transfer of funds. The term "money transmission services" means the acceptance of currency, funds, or other value that substitutes for currency from one person *and* the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means.[3] The regulations also stipulate that whether a person is a money transmitter is a matter of facts and circumstances, and identifies circumstances under which a person's activities would not make such person a money transmitter.[4]

The production and distribution of software, in and of itself, does not constitute acceptance and transmission of value, even if the purpose of the software is to facilitate the sale of virtual currency. As a result, the Company's production and distribution of its contemplated software would not make the Company a money transmitter subject to BSA regulation.[5]

BSA Obligations of the Company as an Investor in Virtual Currencies

On March 18, 2013, FinCEN issued guidance on the application of FinCEN's regulations to transactions in virtual currencies (the "guidance").[6] FinCEN's regulations define currency (also referred to as "real" currency) as "the coin and paper money of the United States or of any other country that [i] is designated as legal tender and that [ii] circulates and [iii] is customarily used and accepted as a medium of exchange in the country of issuance."[7] In contrast to real currency, "virtual" currency is a medium of exchange that operates like a currency in some environments, but does not have all the attributes of real currency. In particular, virtual currency does not have legal tender status in any jurisdiction.

---

[1] Bank Secrecy Act Regulations – Definitions and Other Regulations Relating to Money Services Businesses, 76 FR 43585 (July 21, 2011).

[2] 31 CFR § 1010.100(ff).

[3] 31 CFR § 1010.100(ff)(5)(i)(A) and (B).

[4] 31 CFR § 1010.100(ff)(5)(ii).

[5] A number of older FinCEN administrative rulings, although not directly on point because they interpret an older version of the regulatory definition of MSBs, explain the application of our definitions in comparable situations. *See, e.g.,* FIN-2009-R001, "Whether Certain Operations of a Service Provider to Prepaid Stored Value Program Participants is a Money Services Business," January 22, 2009, available at http://www.fincen.gov/statutes_regs/guidance/pdf/fin-2009-r001.pdf.

[6] FIN-2013-G001, "Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies," March 18, 2013.

[7] 31 CFR § 1010.100(m).

The guidance addresses "convertible" virtual currency. This type of virtual currency either has an equivalent value in real currency, or acts as a substitute for real currency.

For purposes of the guidance, FinCEN refers to the participants in generic virtual currency arrangements, using the terms "exchanger," "administrator," and "user." An *exchanger* is a person engaged as a business in the exchange of virtual currency for real currency, funds, or other virtual currency. An *administrator* is a person engaged as a business in issuing (putting into circulation) a virtual currency, and who has the authority to redeem (to withdraw from circulation) such virtual currency. A *user* is a person that obtains virtual currency to purchase goods or services on the user's own behalf.

The guidance makes clear that an administrator or exchanger of convertible virtual currencies that (1) accepts and transmits a convertible virtual currency or (2) buys or sells convertible virtual currency in exchange for currency of legal tender or another convertible virtual currency for any reason (including when intermediating between a user and a seller of goods or services the user is purchasing on the user's behalf) is a money transmitter under FinCEN's regulations, unless a limitation to or exemption from the definition applies to the person.[8] The guidance also makes clear that "a user who obtains convertible virtual currency and uses it to purchase real or virtual goods or services is **not** an MSB under FinCEN's regulations."

How a user engages in obtaining a virtual currency may be described using any number of other terms, such as "earning," "harvesting," "mining," "creating," "auto-generating," "manufacturing," or "purchasing," depending on the details of the specific virtual currency model involved. The label applied to a particular process of obtaining a virtual currency is not material to the legal characterization under the BSA of the process or of the person engaging in the process to send that virtual currency or its equivalent value to any other person or place. What is material to the conclusion that a person is not an MSB is not the mechanism by which person obtains the convertible virtual currency, but what the person uses the convertible virtual currency for, and for whose benefit. Activities that, in and of themselves, do not constitute accepting and transmitting currency, funds or the value of funds do not fit within the definition of "money transmission services" and therefore are not subject to FinCEN's registration, reporting, and recordkeeping regulations for MSBs.[9]

---

[8] The definition of "money transmitter" in FinCEN's regulations defines six sets of circumstances – variously referred to as limitations or exemptions – under which a person is not a money transmitter, despite accepting and transmitting currency, funds, or value that substitute for currency. 31 CFR § 1010.100(ff)(5)(ii)(A)-(F).

[9] However, a user wishing to purchase goods or services with a convertible virtual currency it has obtained, which pays the convertible virtual currency to a third party at the direction of a seller or creditor, may be engaged in money transmission. A number of older FinCEN administrative rulings, although not directly on point because they interpret an older version of the regulatory definition of MSBs, discuss situations involving persons that would have been exempted from MSB status, but for their payments to third parties not involved in the original transaction. *See* FIN-2008-R004 (Whether a Foreign Exchange Consultant is a Currency Dealer or Exchanger or Money Transmitter - 05/09/2008); FIN-2008-R003 (Whether a Person That is Engaged in the Business of Foreign Exchange Risk Management is a Currency Dealer or Exchanger or Money Transmitter - 05/09/2008); FIN-2008-R002 (Whether a Foreign Exchange Dealer is a Currency Dealer or Exchanger or Money Transmitter - 05/09/2008).

To the extent that the Company purchases and sells convertible virtual currency, paying and receiving the equivalent value in currency of legal tender to and from counterparties, all exclusively as investments for its own account, it is not engaged in the business of exchanging convertible virtual currency for currency of legal tender for other persons.  In effect, when the Company invests in a convertible virtual currency for its own account, and when it realizes the value of its investment, it is acting as a user of that convertible virtual currency within the meaning of the guidance.  As a result, to the extent that the Company limits its activities strictly to investing in virtual currency for its own account, it is not acting as a money transmitter and is not an MSB under FinCEN's regulations.  However, any transfers to third parties at the behest of the Company's counterparties, creditors, or owners entitled to direct payments should be closely scrutinized, as they may constitute money transmission. (See footnote 10 to this ruling.)

If the Company were to provide services to others (including investment-related or brokerage services) that involved the accepting and transmitting of convertible virtual currency, or the exchange of convertible virtual currency for currency of legal tender or another convertible virtual currency, of course, additional analysis would be necessary to determine the Company's regulatory status and obligations with respect to such activity.[10]  In addition, should the Company begin to engage as a business in the exchange of virtual currency against currency of legal tender (or even against other convertible virtual currency), the Company would become a money transmitter under FinCEN's regulations.  Under such circumstances, the Company would have to register with FinCEN, implement an effective, risk-based anti-money laundering program, and comply with the recordkeeping, reporting, and transaction monitoring requirements applicable to money transmitters.

This ruling is provided in accordance with the procedures set forth at 31 CFR Part1010 Subpart G.[11]  In arriving at the conclusions in this administrative ruling, we have relied upon the accuracy and completeness of the representations you made in your communications with us.  Nothing precludes FinCEN from arriving at a different conclusion or from taking other action should circumstances change or should any of the information you have provided prove inaccurate or incomplete.  We reserve the right, after redacting your name and address, and similar identifying information for your clients, to publish this letter

---

[10] For example, providing specific brokerage-related services might require the Company to be registered with the Securities and Exchange Commission (SEC) or the Commodities and Futures Trading Commission (CFTC), in which case the Company would be covered under the BSA as a securities broker-dealer or a commodities or futures trader. If the Company did not fall under SEC or CFTC supervision, then the extent to which its money transmission activities were integral to the non-money transmission services it provided would need to be considered in order to determine whether the Company could claim an exemption from the money transmitter definition under 31 CFR § 1010.100(ff)(5)(ii)(F), or would qualify as a money transmitter under FinCEN's regulations.

[11] Your subsequent e-mail communication of September 24, 2013 has informed us that you received a subpoena from the New York State Department of Financial Services on August 9, 2013 regarding the Company's activities. Although you have not informed us, and we have not by other means become aware, of the substance of any investigation to which this subpoena may relate, we have waived the requirement in our regulations that you certify that the question at issue in this administrative ruling is not applicable to any ongoing investigation. *See* 31 CFR §§ 1010.711(a)(4).

as guidance to financial institutions in accordance with our regulations.[12]  You have fourteen days from the date of this letter to identify any other information you believe should be redacted and the legal basis for redaction.

     If you have questions about this ruling, please contact FinCEN's regulatory helpline at (703) 905-3591.

                                        Sincerely,

                                        //signed//

                                        Jamal El-Hindi
                                        Associate Director
                                        Policy Division

---

[12] 31 CFR §§ 1010.711-717.