UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | Case No.:  18-cr-20579 |
| | Honorable Victoria A. Roberts |
| Plaintiff, | |
| v. | |
| Bradley A. Stetkiw, | |
| Defendant.                              / | |

## **GOVERNMENT'S SENTENCING MEMORANDUM**

Bradley Stetkiw operated an illegal money transmitting business, in which he exchanged bitcoins for cash and vice versa.  In the course of investigating this business, the government examined Stetkiw's computers and found images of sexually exploited children.

Stetkiw pleaded guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two) and one count of Operating an Unlicensed Money Transmitting Business in violation of  18 U.S.C. § 1960 (Count Three).  His undisputed guideline range is 37 – 46 months.  As part of his plea agreement, Stetkiw has agreed to serve at least 36 months in prison.

For the reasons stated in this memorandum, a sentence of 46 months incarceration followed by five years' supervised release, is "sufficient, but not greater than necessary," pursuant to the purposes of 18 U.S.C. § 3553(a).

I. BACKGROUND

A cryptocurrency, such as bitcoin, is "at the most basic level . . . a medium of exchange that functions like money (in that it can be exchanged for goods and services) but, unlike traditional currency, is untethered to, and independent from, national borders, central banks, sovereigns, or fiats." Latham & Watkins LLP, Cryptocurrency: A Primer (2015). (Attached as Exhibit 1). "In other words, it exists completely in the virtual world, traded on multiple global platforms." Id. Bitcoin is the most popular cryptocurrency. See, e.g., Id.

Despite being "virtual," bitcoins can be used to purchase tangible goods. As of 2015, there were "anywhere from 80,000 to 220,000 [bitcoin] transactions occurring per day, representing over $50 million in estimate daily volume." Id. The mainstream retailer Overstock.com accepts bitcoins. See https://99bitcoins.com/bitcoin/who-accepts/; https://help.overstock.com/help/s/article/Bitcoin. Since, 2014, the e-commerce giant PayPal has permitted merchants on its platform to accept bitcoins. See https://money.cnn.com/2014/09/26/technology/paypal-bitcoin/index.html.

But bitcoins also have a darker side. Like any medium of exchange, they can be used to purchase illegal goods and services. And, in recent years, bitcoins' popularity and value have exploded because of online markets hawking drugs and other illegal goods. See, e.g., U.S. v. Ulbricht, 31 F. Supp. 3d 540 (S.D.N.Y.

2

2014); LARGEST ONLINE "DARK MARKET" SHUT DOWN, 2017 WL 3085659.

## II. OFFENSE CONDUCT

### A. Stetkiw's Illegal Money Transmitting Business

Stetkiw, facilitated by advertisements on the website "LocalBitcoins," exchanged bitcoins for cash and vice versa. Stetkiw claimed to be "the longest, most reliable and honest trader in Oakland County." An undercover officer—after making initial contact with Stetkiw via the "LocalBitcoins" website—provided Stetkiw with $56,700 in U.S. currency over the course of six undercover transactions between August of 2015 and August of 2017. Each of these transactions occurred in Oakland County, Michigan. After each cash transaction, Stetkiw—in return for a fee—electronically transferred control of bitcoins to the undercover officer.

Stetkiw was not a licensed money transmitter with either the federal government or the state of Michigan. At no time did Stetkiw attempt to verify the identity of the undercover officer, and he was explicit that he did not wish to know what his customer was going to do with the bitcoins. Stetkiw also counseled the undercover officer on concealing cash from police.

### B. Stetkiw's Possession of Child Pornography

In 2017, as part of the investigation into Stetkiw's bitcoin dealings, various

electronic devices were seized from his residence in Bloomfield Hills. Review of these devices uncovered child pornography, and this discovery led to a follow-up seizure of additional electronic devices from Stetkiw's residence in 2018.

Forensic investigators ultimately recovered nine images of children under the age of eighteen engaged in sexual activity from Stetkiw's media. These included multiple images of children under the age of twelve. One of the images involved the sexual abuse of an infant. The relevant images were recovered from devices seized in both 2017 and 2018, suggesting that Stetkiw's sexual interest in young children is uncontrollable and that he is unrepentant.

In the course of examining computer hard drives seized from Stetkiw, forensic investigators also determined that he used at least three distinct "peer-to-peer" (PTP) file share programs as well as the program "CC Cleaner," which can eliminate computer forensic evidence. His use of software designed to eradicate forensic evidence demonstrates that Stetkiw was aware of the illegality of his actions and sought to cover them up. Considering his use of this tool along with the use of multiple PTP programs, it is almost certain that the identified images represent only a small fraction of Stetkiw's viewing of child pornography.

Stetkiw's sexual interest in children also has a long history. In 2006, when stopped at the U.S. boarder returning from Canada, Stetkiw was in possession of three books that included poems, lyric, and dialogue referring to child pornography

4

as well as a compact disc with two adults hugging two male children on the label. He also possessed hand-written receipts for varying amount of money in different foreign currencies that bore notes thanking him for being "on the front lines." This not only demonstrates that Stetkiw's interest in the exploitation of children is neither recent nor superficial, but it ties him to a broader community of individuals advocating for the sexual abuse of children.

### III. Restitution

Stetkiw's Rule 11 agreement obligates him to pay restitution to victims associated with the images of child pornography found on his computer if such victims are (1) identified prior to sentencing and (2) request restitution. While the government has identified one of the victims depicted in images seized from Stetkiw, that victim has not requested restitution.

### IV. Forfeiture

Stetkiw has agreed to forfeiture of $5,730.00 in U.S. currency, miscellaneous documents, and computer equipment linked to his viewing of child pornography. A proposed order of forfeiture will be submitted separately.

### V. Guidelines Range

The government has calculated that Stetkiw's sentencing guidelines call for a term of imprisonment of 37 – 46 months. The defendant does not dispute this range.

With respect to Stetkiw's possession of child pornography, the Base Offense Level for Count Two is 18 (Guideline § 2G2.2(a)(1)). This increases to an Adjusted Offense Level of 24 based on the following undisputed adjustments:

- No distribution (2G2.2(b)(1)) (-2);
- Minor under 12 (2G2.2(b)(2) (+2);
- Sexual abuse of infant (2B1.1(b)(10)(C)) (+4); and
- Use of a computer (2G2.2(b)(6)) (+2).

With respect to Stetkiw's operating of an illegal money transmitting business, the Base Offense Level for Count Three is 12 (Guideline § 2S1.3). There are no applicable enhancements to this charge's guidelines.

The Multiple Count analysis of Guideline § 3D does not increase Stetkiw's offense level beyond the Adjusted Offense Level of Count Two, thus his Combined Adjusted Offense Level remains at 24.

The government acknowledges that Stetkiw has accepted responsibility for his crimes, and thus has reduced the Offense Level Total by three points to 21.

Defendant has no criminal history, which results in a Guideline Range of 37 to 46 months and a Fine Guideline Range of $15,000 to $150,000. The government is not requesting that the Court impose a fine.

**VI.  Sentencing Factors**

Title 18, United States Code, Section 3553(a), sets forth a number of factors the Court shall consider in sentencing the defendant. These factors are described below, numbered as corresponding to Section 3553(a):

**(1)  The nature and circumstances of the offense…**

**(a) Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two)**

Child pornography offenses result in perpetual harm to victims, and these offenses validate and normalize the sexual exploitation of children.  In the criminal justice system, child pornography is often described in sterile, clinical terms.  This is necessary to the extent that the law requires objective descriptions of conduct, but it can unfortunately minimize the horror behind the images.

> The sterilization goes far beyond properly removing emotion from sentencing decisions.  Images are described in the most clinical sense.  Victims all too often remain nameless.  The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

U.S. v. Cunningham, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), aff'd, 669 F.3d 723 (6th Cir. 2012).[1]

---

[1] *See also* In re Amy Unknown, 636 F.3d 190, 201 n.12 (5th Cir. 2011), (*citing* United States v. Norris, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); United States v. Yuknavich, 419 F.3d 1302 (11th Cir. 2005); United States v. Grosenheider, 200 F.3d 321, 332-34 (5th Cir. 2000).

In passing 18 U.S.C. § 2251, Congress bluntly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, sexual abuse of children is memorialized forever. It is terrible enough that a child has to live with the memory of his or her nakedness and abuse in front of the initial photographer. It is hard to even comprehend how that child could also then learn to cope with the fact that strangers everywhere are using that painful memory to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do it.

Stetkiw's connection to child exploitation goes beyond the nine images recovered from his computer. The wiping software identified on Stetkiw's hard drives, combined with his use of multiple PTP file sharing programs, suggests that

8

the government has only uncovered a fraction of Stetkiw's history of exploiting children. This concern is heightened by Stetkiw's 2006 border stop in which he was found to possess literature glorifying the sexual abuse of children. Thus, while the government cannot conclusively demonstrate possession of child pornography beyond the nine images described herein or prove that Stetkiw distributed child pornography, he was unquestionably part of an ecosystem that normalizes the sexual abuse of children and encourages sexual abuse for the gratification of others.

This deep and disturbing history supports the government's request for a top-of-the-guidelines sentence. Possession of only a single additional image would have raised Stetkiw's guidelines by an additional two levels, and the circumstantial evidence just described suggests that it is incredulous to believe that Stetkiw's consumption of child pornography was limited to the nine images found by the government.

### (b) Operating an Unlicensed Money Transmitting Business in violation of 18 U.S.C. § 1960 (Count Three)

Like his consumption of child pornography, Stetkiw's unlicensed money transmitting business enabled and encouraged criminal activity beyond his own. Dark markets providing drugs and other illicit products—including child pornography—cannot thrive without businesses such as Stetkiw's.

Federal law requires exchangers of cryptocurrency to register with federal and (if applicable) state authorities, and to operate an effective Anti-Money Laundering (AML) program. An effective AML program includes complying with "know your customer" procedures, which require tracking all transactions and creating records linking bitcoin purchases to verified individuals. Such records would permit the government to more readily connect purchases on dark markets to identified individuals.

Stetkiw not only failed to comply with these procedures, he affirmatively told an undercover agent that he did not want to know the purpose behind purchases of bitcoins. He also encouraged the undercover officer to come up with a plan to conceal his cash from law enforcement. By flaunting the rule of law and enabling online purchases of illegal material, Stetkiw and others like him hobble law enforcement efforts to prevent the online sale of drugs and other contraband.

In order to recognize the seriousness of Stetkiw's illegal money transmitting business, the government requests that he serve a sentence of ten months on Count 3, concurrent with his sentence to be served on Count 2. As calculated by the government, ten months would be a top of the guideline sentence were Stetkiw to have been convicted of Count 3 alone.

**…and the history and characteristics of the defendant;**

Stetkiw's character is one of the factors driving the government's request for a top-of-the-guidelines sentence. His complete disregard for the law is proven by his disparate crimes, his use of forensic wiping software, and his possession of literature promoting the sexual abuse of children. His affirmative efforts to avoid learning what his customers were doing with the bitcoin that he sold and his provision of advice on hiding cash from police is also disturbing evidence of Stetkiw's dark character.

Stetkiw's choice of crimes also demonstrate that has no concern for lives ruined by the externalities of his criminal activity—sexually abused children and the extensive universe of those harmed by the online trade in drugs and other contraband. The Court should view him for what he is: someone with no moral center who casually breaks the law for both profit and sexual gratification.

Stetkiw's character—and his potential threat to the public—is also evidenced by material found in the course of the investigation suggesting that Stetkiw is excited not only by the sexual abuse of children but also by violence against children. Examination of Stetkiw's computers revealed that he accessed web pages, from a publicly available website, that displayed images of extreme violence. These included images of children who died gruesome, violent deaths as well as images of the castration of a young male. Videos corresponding to the

images were available on these web pages. Stetkiw has admitted viewing images of children and adults who had died violent deaths but denies viewing the videos.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

Stetkiw's punishment should take into account not only the scope and seriousness of his criminal conduct but also the need to deter future crimes—both by Stetkiw and by others. With respect to specific deterrence, Stetkiw's repeated law breaking and the efforts he took to conceal it suggest that significant incarceration is required to convey to him the seriousness of his criminal activity and to incentivize him to conform his behavior to the law upon release.

The need to protect the public is also a significant factor in considering an appropriate sentence. Stetkiw has been, in one form or another, linked to child exploitation since 2006. His dangerous combination of interests in both the sexual abuse of children and extreme violence make him a danger to society. His participation in the underground economy for illegal goods is also a concern. A lengthy incarceration is called for to protect both minor children and the broader public.

Stetkiw's sentence must also function as a general deterrent. This is an especially relevant consideration given the nature of his crimes. Online crimes,

both child exploitation offenses and those linked to cryptocurrency, are notorious difficult to detect and police. When computer crimes are brought to the attention of law enforcement, enormous resources are required to identify and pursue those responsible. A substantial sentences signals to others involved in similar criminal activity that their actions involve real risk.

Deterrence with respect to child pornography offenses is of particular importance for three reasons. First, serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production.

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007).

Second, both Congress and the courts have recognized the high recidivism rates for these types of offenders. *See* Krista L. Blaisdell, Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders, 43 Val. U. L. Rev. 1155, 1192, n.150 (2009) (compiling congressional statements regarding the high risk of recidivism among child sex offenders); United States v. Pugh, 515 F.3d 1179, 1201 (11th Cir.

13

2008); United States v. Allison, 447 F.3d 402, 405-06 (5th Cir. 2006); U.S. v. Garthus, 652 F.3d 715 (7th Cir. 2011) ("We need evidence-driven law just as we need evidence-driven medicine . . . statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children.") (citations omitted).

Third, there is an undeniable link between sexual contact offenses and the receipt and distribution of child pornography. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." *See* Lanning, Kenneth V., *Child Molesters: A Behavioral Analysis – For Professionals Investigating the Sexual Exploitation of Children*, Office of Juvenile Justice and Delinquency Prevention, Fifth Ed. 2010, at 107, https://www.icmec.org/wp-content/uploads/2015/10/US-NCMEC-Child-Molesters-A-Behavioral-Analysis-Lanning-2010.pdf.[2]

In determining Stetkiw's sentence, the government also requests that the Court consider the need to deter others from engaging in illegal money transmitting businesses. Exchanging bitcoins for cash is easy money for a technologically savvy

---

[2] Numerous studies support this conclusion. For example, a 2009 study involved 115 men whose known sexual offense history at the time of sentencing involved the possession, receipt, or distribution of child abuse images, but did not include any contact sexual abuse. Michael L. Bourke and Andres E. Hernandez, Hands-On Offending by Child Pornographers: The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders, JOURNAL OF FAMILY VIOLENCE, 24,(3), 183-191 (2009), https://olemiss.edu/depts/ncjrl/pdf/I%20C%20A%20C/2013%20-%20April%2018-19/09f%20-%20BUTNER%20STUDY.pdf. By the end of a residential sex offender treatment program, only 24 of the 115 denied committing a contact sex offense. Nine of the 24 were polygraphed on the issue. Seven failed the polygraph test. The average number of victims revealed by those who had previously denied contact was 8.7.

individual, and—as with other crimes that can be obfuscated through the Internet—the government faces numerous obstacles in policing illegal money transmitting businesses. There is therefore a need to demonstrate meaningful consequences to potential bitcoin entrepreneurs that may consider sidestepping legal requirements involving registration and the prevention of money laundering. To this end, the government requests a separate sentence of incarceration for Count 3 be imposed, to be served concurrently with that imposed for Count 2.

**(3) The kinds of sentences available**

The maximum penalty for 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography) is twenty years imprisonment and/or a fine not to exceed $250,000.00. The maximum penalty for 18 U.S.C. § 1960 (Operating an Unlicensed Money Transmitting Business) is five years of imprisonment and/or a fine not to exceed $250,000. Stetkiw is therefore facing a maximum of 25 years of imprisonment and a maximum $500,000 fine.

Stetkiw's conviction under 18 U.S.C.2252A(a)(5)(B) requires that he be sentenced to five years of supervised release.

**(4) The sentencing range established by the Guidelines**

As set forth above in Section IV, the appropriate sentencing range, pursuant to the U.S Sentencing Guidelines is 37 to 46 months imprisonment. The range is based on a Combined Adjusted Offense Level of 24 and a three level adjustment for

acceptance of responsibility, making his Total Offense Level 21. Stetkiw's criminal history is Category I.

### (5) Pertinent policy statements issued by the Sentencing Commission

The government is unaware of any pertinent policy statement issued by the United States Sentencing Commission.

### (6) The need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct

As the lone defendant in this case and as someone convicted of multiple disparate crimes, the government is aware of no comparable sentencings that can be used as a point of comparison.

### (7) The need to provide restitution

Restitution is not applicable in this case, as described above in Section III.

### RECOMMENDATION

For all the reasons above, the government recommends that defendant Bradley Stetkiw be sentenced to a term of 46 months in prison followed by five years of supervised release for his conviction on Count Two, 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography) followed by five years of supervised release. For his conviction on Count Three, 18 U.S.C. § 1960 (Operating an Unlicensed Money Transmitting Business), the government recommends that he be sentenced to a term of imprisonment of ten months, concurrent with the sentence to be served for Count Two.

        Respectfully submitted,

        MATTHEW SCHNEIDER
        United States Attorney

        */s/ Timothy J. Wyse*
        Timothy J. Wyse
        Assistant U.S. Attorney
        (313) 226-9144
        211 West Fort, Suite 2001
        Detroit, Michigan 48226
        Timothy.Wyse@usdoj.gov

February 26, 2020